Good morning, Your Honor. I'm Daniel Tate, Federal Attorney for the U.S. Supreme Court. William Moss, appeals fellow in our office and an eligible law school graduate, is presenting argument pursuant to Rule 46.1. Thank you. Welcome back, Mr. Moss. Thank you. Good morning, Your Honors. And may it please the Court, William Moss of the Federal Defenders appearing on behalf of Rafael Rauda-Lopez under Local Rule 46.1e. On at least three occasions, this Court has indicated that under a proper reading of the Immigration and Nationality Act, there is no categorical match between New York's definition of sexual contact and the INA's generic definition of sexual abuse of a minor. New York's definition covers things like kissing between teenagers and is not categorically among the most heinous and egregious aggravated felonies like murder and rape. It makes sense that the government has not attempted to defend that interpretation in this appeal. While Chevron deference once required this Court to ignore the best reading of the INA, it no longer does. At the very least — Can I ask you to back up? You say we've three times suggested it's not a categorical match. What did we suggest it to be? Of course, Your Honors, said relying under the best reading of the — We said a match. I know. But let's start with the baseline. We've held that it is a match, right? Correct. I was only saying — So that's a starting point. Now, I understand if you're arguing there are three previous cases where we suggested it didn't, but you have to acknowledge that there's one case where we held that it did. Of course, Your Honor. But Dabeek was relying on Chevron deference, which we believe no longer — obviously no longer applies. You've got to ask us to overrule Dabeek, right? I disagree with that, Your Honor. Oh, you don't? Okay. I think that all this Court has to recognize is something that's kind of straightforward, which is that at the very least, Loper-Bright does not require extending Chevron-based precedents to contexts where they have not previously applied. And that includes this criminal case. The Second Circuit has never applied Dabeek in the criminal context, and it therefore would be an extension to do so here. And I understand Your Honor has heard a similar challenge in the civil context, and we view this challenge as different insofar as perhaps Dabeek might continue to control with respect to the litigants in Dabeek itself, and perhaps other litigants in civil adjudications in front of the BIA. But it would be an extension to apply it in a criminal case. How is it an extension, though? Because I thought our holding in Dabeek — certainly it did have application in the immigration context, so it would be that. But did it not offer a holding as to the definition of sexual abuse of a minor for purposes of, what is it, 1101A43A of aggravated felony? So was it not interpreting the same statutory provision? It was, but — Did it say comma for immigration purposes? Because it would be very odd for us to say that the very same statutory term means something, but would say, well, we apply it in one way in one context, but we apply it a different way in a different context when both the criminal and the immigration cases turn to the same statute for the meaning of a term. That's unusual. I understand. It is a little counterintuitive, Your Honor, but I think that's the natural implication of Loper-Bright. We might hew to specific holdings regarding specific agency actions, for example, but we're not going to apply — even where the exact same legal question and issue arises, if it's in a new context. Courts have said that we're not going to defer to that. I think Loper-Bright could not possibly — whatever it's saying, whatever the sorry discussion in that paragraph means, it cannot possibly mean that we apply those precedents in new contexts, especially when there are different considerations at play. You know, Chevron is particularly inapt in the criminal context, as many judges have observed over the years. And so the fact that the Court has not squarely applied Dabeek in the criminal context matters. So Dabeek relied on Chevron deference to the BIA. 1326b2 sets forth criminal provisions. What interest, what reason would we have to extend Chevron deference or Loper-Bright deference or any deference to the BIA's interpretation of a criminal statute? I think there is no reason. I think that would be particularly troubling, given the Supreme Court's decision in Loper-Bright that Chevron has overruled. And it also mentions that, you know, Judge Kethledge has said it's surpassingly clear the extent to which Chevron precedents continue to bind — continue to bind courts, and it's only to the extent they found specific agency actions lawful. And so, you know, whether Dabeek continues to apply in the civil context, I really think it would be in error to apply it in the criminal context, given the immense separation of powers concerns with the executive being able to interpret the law and enforce it, and the judiciary not being able to apply the best meaning of the statute as Loper-Bright requires. I have a question of plain error. How is the sentence here anchored to the 20-year maximum? I know there was a statement at the first hearing, but then there was additional briefing, and then four months later or so, there was the second hearing, at which the sentence was actually given, right? Yes. And at that one, I don't — I don't think I saw any mention of the maximum. There was a lot of discussion of the guidelines and why the judge was going to go above that, but I didn't see any reference to the maximum. So it's hard for me to understand how it was anchored. I think this is an unusual case insofar as the court itself told the litigants that it was looking at the statutory maximum, and we don't have to rely solely on that representation, which I think we should take at face value. The court said it was using that as a reference point. The sentence was also significantly above the guidelines, more than twice the top of the guidelines range. And, you know, the difference in the range is zero to 10 years versus zero to 20 years is quite substantial. So I think this is as clear as it gets in terms of establishing actual prejudice, given the district court's own representations about how it was thinking about this. You know, courts have said that there's prejudice where they cannot say with complete confidence that the district court would have imposed the same sentence absent the error. And I don't see how this court could say with complete confidence that the district court would have imposed the same sentence, given its own state of rationale and how it's thinking about this issue. Could you comment briefly on the proposition that Dubique, I think in your view, is premised on Chevron deference, and it certainly relied on that. But as I read it, I didn't think that it completely relied on Chevron deference. I thought it did that, certainly, at the outset. And it was turning back to other cases like Rodriguez v. Barr that had also involved some Chevron deference. But I thought it also did some other forms of statutory interpretation that were not Chevron-based, that it looked at other statutes. It looked at what the natural sweep of the language sexual abuse of a minor was. Could you comment on that? Do you think it was 100 percent Chevron-based or primarily Chevron-based? How would you characterize it? I think with respect to the issue of what kind of sexual contact does the INA cover, it was relying exclusively on Chevron. With respect to that issue, all it says was, we've applied that in the past and we're going to do so again here. With respect to the age issue, I take Your Honor's point that the court does discuss some other factors, but it's still relying on Chevron to a certain extent. And we actually don't contest that portion of DeBate's opinion about the age requirements. I think it's unusual also that the government has completely failed to attempt to defend the interpretation of the INA that the BIA has promulgated. And I think that is a concern. I think that the merits alone could sort of suffice for today's purposes. I think the court could assume without deciding that we have the better reading given the government's apparent concession. But if we're... Well, I don't know if it's a concession. I mean, they said if you're going to reach it, you should be remanded to the district court in the first instance. Well, I think they've abandoned any arguments on the merits given their failure to brief this in even a cursory manner. They don't spend a single sentence trying to justify that interpretation on the merits. And I'm not sure how they could if you just go through the exact steps that Esquivel and Quintana did with respect to the statutory interpretation issue. Okay. Thank you, counsel. You're reserved two minutes for rebuttal. We'll hear from the government. Good morning. May it please the Court. I'm Charles Kelly, Assistant U.S. Attorney. I represent the United States of America. Plain error. If there was error here, it certainly wasn't plain. And to call this plain error would be so unfair to Judge Brown. There was direct, on-point precedent that no one said was in error. Following Second Circuit precedent, De Beek, when it has not been overruled by the Supreme Court, cannot be plain error. Judge Brown specifically asked counsel what was the statutory maximum. From start to finish, he was told 20 years. From start to finish. Specifically asked before the plea was taken and at the sentencing, asked if there were any objections to the PSR, any discussion of any PSR provision, and defense counsel said no to both of those. And the 20-year, of course, was not only on the cover page of the PSR, but it was also in the sentencing section. And even if this Court does not find waiver, and as I said, there was waiver from start to finish here. Knowing waiver. I'm sorry? Knowing involuntary waiver of a right? Knowing involuntary waiver. Yes. I mean, this sentencing was months after Loperbright. And sentencings of illegal reentries in sentencing... When was the PSR prepared before or after Loperbright? I'm sorry? When was the PSR prepared before Loperbright? So the fact that it didn't come up again is silence. It's not a waiver. Well, that certainly that's, I understand that position, Your Honor. We view, those of us who have done many illegal reentry sentencings in central Iceland where the defendants are usually detained, know that the expedition is the goal of those sentencings. Oftentimes, sentencing proceeds shortly after the plea. And here, expedition was the objective, and I don't think there was any incentive on the defendant's part to raise Loperbright before Judge Brown and to raise any. It only has to do with the statutory maximum. I'm not sure how that factors into the concept of waiver, that everyone was in a hurry. I mean, I get that. That may very well be an incentive that people have for whatever reason. I'm not seeing the connection to the waiver argument. Well, to explore this issue, to look at the landscape of the generic definition of sexual abuse of a minor would certainly be something that delayed an illegal reentry proceeding. Well, that could be true of any objection that wasn't raised, but you're not saying that any objection that wasn't raised by definition was waived and not forfeited because everyone was in a hurry? That makes no sense to me. No, I'm not saying that. I'm saying that with regard to this specific objection that's being raised. But there has to be some indication that somebody had this in mind to waive it. Well, there's no indication on the record that somebody had this in mind. And why would you say it was affirmatively waived? As opposed to just forfeited. It never came up. I get that. Yes. But I don't understand why, if we have no indication that this is opposed to, I don't know, you can think of a million possible objections. Simply because. Hang on. I'm sorry? Hang on. I'm still talking. I can think of a million possible objections someone could have raised at the sentencing, but I don't think he would suggest that every single one of those that I could imagine was affirmatively waived simply by virtue of the fact that, A, it wasn't raised, and, B, everyone was in a rush. That's what I'm saying. And I'm saying, just to go back to Judge Underhill's point, I don't see how you extract from those two propositions the conclusion that this was affirmatively waived as opposed to forfeited. Yes, Your Honor. Let me return to plain error. Even if this Court does not find waiver to say that Judge Brown engaged in plain error here and was derelict in his duties, you have to make a series of erroneous assumptions. You have to assume that it was error to proceed with sentencing using 20 years as the maximum sentence, despite defense counsel's agreement. Judge Brown was simply following this Court's precedent. You'd have to find that local court You were saying earlier that everyone was under the understanding that it was 20 years and that that was in the PSR, and, you know, it wasn't just the one comment that Judge Brown made in the first hearing, saying that he was looking at the max, but it was sort of just that that was everyone's understanding. So how do we know that it wasn't anchoring the actual sentence he gave? Look at his discussion. Look at what Judge Brown says about the sentence and what it's tethered to. It's tethered to The first thing he said at the first hearing was, I'm looking at the max. That's pretty explicit. Well, that was never said. That was never reiterated at the main How many times does a judge need to say something for us to believe that he thinks it? Do you think he forgot it in between the first and the second hearing? Because, for example, had there been some sort of claim that the defendant made at the first hearing and the judge says, well, I reject that, and then the second hearing comes around and it never comes up again, we would say, well, the judge talked about it, ruled on it. We assume that the judge has it in his mind. It's just that there was no reason to talk about it again. I don't understand the idea that if something is said at one hearing but not at the other, it somehow vanishes. Well, the idea that what vanishes is the idea that it's anchoring the sentence. What's anchoring the sentence is what Judge Brown said was anchoring the sentence, and that's the four illegal entries into this country by the defendant. And how is he going to stop the illegal entries into this country? And the sentence ends up being what? Less than a third of the maximum that defendants are now urging. Three years. How can it be that the difference between the 10 and 20 years is relevant and neither of them is implicated when the guidelines are not implicated by the change? Let me shift gears a little bit. Are you aware of any, you know, any case where the judge made a decision by this court that held that a state misdemeanor constitutes an aggravated felony for purposes of any aspect of federal law? A misdemeanor is not a felony. No, a misdemeanor is not a felony, but the law is that the courts under the categorical approach do not look to the state title of the crime. And here, the they look to the elements of the crime under the categorical approach. And when that happens here, the elements are the sexual abuse of a minor as shown by sexual contact with some. I'm aware of your argument, but if you look at 1326b-2, it refers to conviction for the commission of an aggravated felony, which strongly implies, by my reading of the statute, that the sexual abuse of a minor has to constitute a felony in order to satisfy the definition. I understand it's in the definition and so forth, but to take the elements of a misdemeanor and transform them into an aggravated felony for purposes of federal law seems a little bit far-fetched. Well, that is exactly what the case law says. In other words, has this Court held sexual abuse of a minor, a misdemeanor sexual abuse of a minor, presumably a non-serious sexual abuse of a minor if you can have such a thing, nonetheless becomes an aggravated felony for purposes of federal law? Yes. I don't have that case. The cases are pretty clear. What are we saying in Dubik? The title doesn't matter. Hang on, counsel. Sorry? We said it in Dubik, right? But I think the question then becomes whether it's equally applicable for immigration law as for criminal law, right? Yes. I mean, Dubik said that this very statute, it couldn't have been more on point, controls and that that is sexual abuse of a minor. For purposes of cancellation of removal. I get that. But the criminal law is different than the civil law. It's a different consequence, not just cancellation of removal, but imprisonment. So are we going to treat a misdemeanor as an aggravated felony for purposes of the criminal law? And that's certainly what the case law does. It ignores the title of misdemeanor. And here, the very statute that we're arguing about has been held by this Court to be sexual abuse of a minor. In the civil context. That's Judge Nardini's argument. But the case, Your Honor, did not limit it to the civil context. The case was interpreting a criminal statute of the State of New York. And giving deference to the BIA's interpretation of that civil law. Well, in part. Dubik was also some independent reasoning by this Court. It wasn't 100 percent Chevron deference. It was a mix of Chevron deference and independent legal reasoning. It was a two-part decision. It wasn't a decision that just went straight ahead. Chevron deference to Rodriguez. In any event, in following Rodriguez, Rodriguez had a lot of independent reasoning in it. It was not, you know, it was not Chevron deference 100 percent either. Both those cases had independent reasoning of this Court. But this is the first time that the issue of whether Dubik, whether the BIA's interpretation and so forth, are going to apply in a criminal context. Well, yes. This is the first time Dubik would be followed in a sexual abuse of a minor case, criminal case, that I am aware of. It's going to be, if it's followed, the exact same statute. And the idea that it's now being sorted out, depending on the type of case it is, you do not, this Court does not interpret a statute of the State of New York for this purpose, but then revisits it for another purpose. This Court interprets a statute. And what Dubik did was interpret the very statute that we're arguing here. So how could that President This statute has both civil and criminal provisions. Does the fact that they combine those provisions change how we view the interpretation of the criminal statute? Your Honor, the statute being interpreted has no civil applicability. The New York State statute is a criminal statute. That's under the penal law. That's a criminal statute. And that is the statute that this Court interpreted.  Sorry? 8 U.S.C. 1326 has both civil and criminal provisions, right? Oh, in different subsections, yes. Yes. Yes. And the fact that they've been joined into a single statute, in your view, means that the criminal provisions have to follow the interpretation of the civil provisions, right? No, Your Honor. I'm referring to the New York State statute. I'm referring to the Federal statute. Let's focus on that for a second. Yes, Your Honor. Does the fact that the civil and criminal provisions are combined in a single statute change the way we interpret a criminal statute? No. Thank you. Thank you, counsel. Thank you. Mr. Ross, you're reserved two minutes for rebuttal. This Court should do what Loper-Bright instructs and apply the ordinary tools of statutory interpretation and construction to this provision. This Court should apply traditional tools like nocitor associes. Given the Supreme Court's observation in Esteval-Quintana that these – that sexual abuse of a minor appears in the same subsection as murder and rape. And it should also defer the – not defer. It should also look to the ordinary meeting of the phrase aggravated felony, both felony and the aggravated portion of that, as Judge Underhill is suggesting. I think – I do want to stress that I think there is a reason that this Court has repeatedly called this match into question. The answer is clear if you just go through the exact steps that Esteval-Quintana did. And De Beek was, on this point, the definition of sexual contact, De Beek was squarely premised on Chevron deference. I don't think there's a serious argument to the contrary. It just cites prior cases deferring to the INA's – to the BIA's interpretation in the civil context. As for the prejudice inquiry, we have not only the district court's own statements, the above-guideline sentence, but also the common-sense inference that a statutory maximum grounds an exercise of discretion insofar as it is Congress's determination, the legislative determination of how severe a crime is. And I think that has to also play into the calculus here in how we're interpreting this. Thank you, counsel.  Thank you both. We'll take the case under advisory. Thank you very much.